**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **AYODELE AFOLABI, *et al.*,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | **Civil Case No. SAG-25-02670** |
| | * | |
| **BANK OF AMERICA, N.A.,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

* * * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiffs Ayodele Afolabi and Victoria Air Cargo ("VAC" and, with Afolabi, "Plaintiffs") filed a First Amended Complaint against Defendant Bank of America, N.A. ("BANA"), alleging various claims regarding BANA's handling of a customer who allegedly defrauded Plaintiffs. ECF 21. BANA has filed a motion to dismiss the First Amended Complaint. ECF 22. Plaintiffs filed an opposition, ECF 26, and BANA filed a reply, ECF 27. This Court has reviewed the briefing and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, BANA's motion will be granted and Plaintiff's claims will be dismissed with prejudice.

## I. FACTUAL BACKGROUND

The following facts are derived from the First Amended Complaint, ECF 21, and assumed to be true for purposes of adjudicating this motion. Afolabi is the CEO of VAC, a logistics and freight forwarding company specifying in international shipping to Nigeria. *Id.* ¶¶ 1, 2. Plaintiffs have never been customers of BANA and had no contractual relationship with BANA. *Id.* ¶ 13.

To serve the needs of a customer, "Plaintiff"[1] located a vehicle to purchase from a business in Indiana called B & W Dealership. *Id.* ¶¶ 6, 7. On or about May 5, 2025, Afolabi caused a wire transfer in the amount of $100,000 to be sent from "Plaintiff's Wells Fargo account" to a BANA account titled in the name of B & W Auto Sales, LLC. *Id.* ¶ 7. BANA received the money into the account of B & W Auto Sales, LLC, but the automobile was never delivered to Plaintiffs. *Id.* ¶ 8. Afolabi later "learned that B & W Auto Sales, LLC was a fraudulent entity used to scam customers." *Id.* ¶ 9. Following inquiry from "Plaintiff," BANA declined to return the funds or "provide meaningful information." *Id.* ¶ 11.

Plaintiffs allege (without specific factual assertions in support) that BANA failed to comply with Know Your Customer ("KYC") and Anti-Money-Laundering ("AML") compliance frameworks. *Id.* ¶¶ 10, 16. They further allege "[u]pon information and belief" that "BANA internal controls were not followed, either intentionally or with gross negligence," *id.* ¶ 19, and "Plaintiff was not the only victim defrauded of funds from this same account and BANA knew or should have known of this activity." *Id.* ¶ 20.

Plaintiffs assert state law claims for negligence, conversion, civil conspiracy, and aiding and abetting fraud, along with claims for violations of the Uniform Commercial Code and the Maryland Consumer Protection Act. *Id.*

## II. PROCEDURAL BACKGROUND

On July 9, 2025, Afolabi sued BANA in the Circuit Court for Baltimore City, alleging claims arising out of this same set of facts. *See Afolabi v. Bank of America, N.A., et al.*, Case No. 1:25-cv-02739-JRR ("*Afolabi 1*"). Despite the pendency of *Afolabi 1*, Plaintiffs filed the instant

---

[1] The First Amended Complaint occasionally refers to "Plaintiff" without specifying whether it is Afolabi or VAC.

action in this Court on August 13, 2025. ECF 1. On August 20, 2025, BANA removed *Afolabi 1* to this Court. *Afolabi 1*, ECF 1. BANA then filed a motion to dismiss *Afolabi 1*, leading Afolabi to file a notice of withdrawal, which the Court construed to be a voluntary dismissal of that action. *Afolabi 1*, ECF 10.

In the instant action, which asserts claims about the same facts, BANA filed an initial motion to dismiss. ECF 8. Because Plaintiffs expressed a desire to amend their complaint, this Court permitted amendment and denied BANA's motion without prejudice, ECF 20. The resulting First Amended Complaint, ECF 21, constitutes Plaintiffs' third attempt to state a viable claim against BANA. The instant motion to dismiss ensued. ECF 22.

## III. LEGAL STANDARDS FOR MOTION TO DISMISS

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see*

*Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin*., 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc*., 791 F.3d 473, 484 (4th Cir. 2015). A court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, "[a] court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the

plaintiff is entitled to the legal remedy sought. *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

## IV. ANALYSIS OF THE CLAIMS

### A. VAC

BANA argues that VAC lacks capacity to sue. ECF 22-1 at 4–5. BANA contends, based on records from the State Department of Assessments and Taxation ("SDAT"), that VAC is not a separate legal entity but a trade name for Victoria Motors, Inc.[2] *Id.*; *see* ECF 22-2. Victoria Motors, Inc. therefore would be the real party in interest. ECF 22-1 at 5.

A case must be prosecuted in the name of the real party in interest. Fed. R. Civ. P. 17(a)(1). However, a "court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." *Nicholas v. Green Tree Servicing, LLC*, 173 F. Supp. 3d 250, 257 (D. Md. 2016) (quoting Fed. R. Civ. P. 17(a)(3)). Here, Plaintiffs have had notice of this issue since BANA filed its motion to dismiss in March, 2026. *See* ECF 22. Plaintiffs have taken no action to substitute Victoria Motors, Inc. for VAC. Moreover, they cannot do so because Victoria Motors, Inc. forfeited its corporate status as of September 30, 2025. ECF 22-1 at 4; ECF 22-3. "[T]he Maryland Court of Appeals has long held that when a corporation's charter

---

[2] This Court may take judicial notice of the SDAT records without converting this motion into one for summary judgment. *See* Md. Rule 5-201; *White v. Lexington Ct. Apartments, LLC*, No. CV 16-0427, 2016 WL 1558340, at *3 n.4 (D. Md. Apr. 18, 2016) ("The court may take judicial notice of information found on SDAT's website."); *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013) ("[C]ourts may consider relevant facts obtained from the public record, so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint.") (internal quotation marks omitted), *abrogated on other grounds by Reed v. Town of Gilbert*, 576 U.S. 155 (2015).

is forfeited, it loses the right to sue." *Auto USA, Inc. v. DHL Express (USA), Inc.*, No. CV 16 3580, 2017 WL 839525, at *4 (D. Md. Mar. 3, 2017) (listing Maryland cases).

Plaintiffs offer no explanation for their failure to take any action to rectify the real party in interest issue in the past three months, and, more importantly, no authority to counter BANA's position that Victoria Motors, Inc. cannot be substituted into or join this action because of the forfeiture of its corporate charter.[3] Accordingly, because the real party in interest cannot participate, the claims brought by VAC will be dismissed for failure to prosecute them in the name of the real party in interest.

**B. UCC PREEMPTION**

Plaintiffs assert four separate state common law claims in Counts I-II and V-VI of the First Amended Complaint. ECF 21. But this case is about a wire transfer and therefore implicates the Uniform Commercial Code ("UCC"), codified in Maryland at Md. Code., Comm. Law, § 4A-104. The statute defines a "funds transfer" to include "any payment order issued by the originator's bank or by an intermediary bank intended to carry out the originator's payment order. A funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order." *Id.* § 4A-104(1).

Because the wire transfer in question constitutes a "funds transfer" under that definition, Plaintiff's common law claims relating to the wire transfer are preempted by the UCC. *See Texas Star Nut and Food Co., Inc. v. Truist Bank*, 632 F. Supp. 3d 664, 669 (D. Md. 2024) (citing *Mar-Chek, Inc. v. Mfrs. & Traders Tr. Co.*, No. 18 2765, 2019 WL 3067501, at *6 (D. Md. July 11, 2019)). In fact, while Plaintiffs essentially ask BANA to reverse the wire transfer after the fact,

[3] In fact, Plaintiffs' opposition to the motion, filed by their counsel, contains no case citations whatsoever on any point. ECF 26.

the UCC is clear that the sender cannot cancel a payment order once it has been accepted by the beneficiary's bank, except in very narrow circumstances not applicable here. Md. Code., Comm. Law, § 4A-211(c)(2). Once again, Plaintiffs cite no authority to the contrary. Instead, they simply argue that their claims "are not limited to the wire transfer itself." ECF 26 at 3. But the other aspects of the claim they cite, "Failure to follow KYC/AML procedures; Failure to detect suspicious activity; Maintenance of an account used for fraud; [and] Ignoring clear warning signs," *id.*, and their complaints about "Negligent onboarding; Failure to monitor; [and] Facilitation of fraud," *id.* at 4, all pertain to the single wire transfer involving B & W. Otherwise, Plaintiffs, who are not BANA customers, cannot show any duty owed to them or any injury from any other deficiencies in BANA's practices or procedures. *See Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 227 (4th Cir. 2002) (agreeing with the "numerous cases holding that a bank does not owe noncustomers a duty of care."). This case is not about other BANA conduct. It is solely about the wire transfer and its impact on Plaintiffs.

The UCC was designed to simplify laws governing commercial transactions and ensure uniformity among different jurisdictions. *Texas Star Nut & Food Co., Inc.*, 632 F. Supp. 3d at 669. Thus, "when the Code and common law both provide a means of recovery, the Code should displace the common law, because variations in the common law among states destroy the uniformity in commercial transactions sought to be accomplished by the [UCC]." *Id.* (quoting *Equitable Life Assurance Soc'y of the U.S. v. Okey*, 812 F.2d 906, 909 (4th Cir. 1987)). Article 4A generally preempts common law claims involving funds transfers. *See Mar-Chek, Inc.*, 2019 WL 3067501, at *6; *see Nirav Ingredients, Inc. v. Wells Fargo Bank, N.A.*, No. 21-1893, 2022 WL 3334626, at *1 (4th Cir. Aug. 12, 2022) (finding that negligence claim related to a wire transfer was preempted by the UCC); *Legends Title, LLC. v. Cap. One, Nat'l Ass'n*, 659 F. Supp. 3d 637,

650–53 (D. Md. 2023) (dismissing aiding and abetting claim in connection with a wire transfer as preempted). Therefore, the four state common law claims are preempted by the UCC and must be dismissed.[4]

### C. UCC VIOLATIONS

In Count III, Plaintiffs also attempt to state a claim under various provisions of the UCC, specifically Md. Code, Comm. Law §§ 4A-201, 4A-202, 4A-301, and 4A-303. ECF 21 ¶ 29. That claim fails because Plaintiffs misapprehend the roles of the banks in question. "'Receiving bank' means the bank to which the sender's instruction is addressed." Md. Code, Comm. Law § 4A-103(a)(4). In the instant fact pattern, the receiving bank is Wells Fargo, because Plaintiff instructed his own bank to send the wire transfer to BANA's customer. *See* ECF 21 ¶ 7. "'Beneficiary's bank' means the bank identified in a payment order in which an account of the beneficiary is to be credited pursuant to the order or which otherwise is to make payment to the beneficiary if the order does not provide for payment to an account." Md. Code, Comm. Law § 4A-103(a)(3). In this case, BANA is the beneficiary's bank. *See* ECF 21 ¶ 7.

The four UCC provisions Plaintiffs use to assert their claims all specify obligations of the "receiving bank," Wells Fargo. Plaintiffs' repeated reference to BANA as "the receiving bank" is unavailing and contrary to the definitions in the UCC. Thus, the sections of the UCC that Plaintiffs cite provide no viable cause of action against BANA and Count III must also be dismissed.

---

[4] Even if this Court were to determine that some of Plaintiffs' common law claims avoid preemption, Plaintiffs have not pleaded facts suggesting the existence of any express agreement or understanding between BANA and B & W to defraud them, any knowledge that BANA had of B & W's tortious act, any tort duty owed by BANA to a non-customer, or any facts suggesting BANA's conversion of the $100,000. Thus, Plaintiffs have not adequately stated a claim for any of the common law claims they attempt to assert, even if those claims were not preempted because they are limited to the wire transfer itself.

### D. MARYLAND CONSUMER PROTECTION ACT

Plaintiffs' claim pursuant to the Maryland Consumer Protection Act ("MCPA") alleges:

> BANA's practices in opening and maintaining business accounts without adequate vetting or monitoring, its failure to notify or return funds after receiving notice of likely fraud, and its omissions and deceptive inaction harmed consumers and constitute unfair or deceptive trade practices in trade or commerce.

ECF 21 ¶ 31. First, Plaintiffs were not "consumers" of BANA's, as their complaint specifically alleges that they had no customer relationship. *See id.* ¶ 13. Second, the practices Plaintiffs describe, "opening and maintaining business accounts without adequate vetting or monitoring" and "failure to notify or return funds after receiving notice of likely fraud," are not within the description of "unfair and deceptive trade practices" defined in Section 13-301 of the MCPA. Third, Plaintiffs' cursory assertion about BANA's "omissions and deceptive inaction" falls far short of the heightened pleading standards applicable for an MCPA claim, which requires the "who, what, when"-style of pleading required by Fed. R. Civ. P. 9(b). *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013). Plaintiffs have therefore failed to state a claim in Count IV.

## V. CONCLUSION

For the reasons set forth above, BANA's Motion to Dismiss, ECF 22, is GRANTED in its entirety. Plaintiffs' claims are dismissed with prejudice as Plaintiffs have failed to state a claim after three attempts. A separate implementing Order accompanies this opinion and will close this case.

Dated: August 20, 2026

/s/
Stephanie A. Gallagher
United States District Judge